IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| TAVARES L. FARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| SERGEANT BUTNER, WHITE, JR., NURSE | ) | 6:14-CV-02059-GAP-KRS |
| ROBINSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANT RENEE ROBINSON, LPN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LEGAL AUTHORITY

Renee Robinson, LPN ("Nurse Robinson"), by and through her undersigned counsel, hereby files this Motion for Summary Judgment and Memorandum of Legal Authority pursuant to Fed.R.Civ.P. 56 and M.D. Fla. R. 3.01(a), showing the Court the following:

## MOTION

1.     Tavares Farrington ("Plaintiff"), an inmate incarcerated by the Florida Department of Corrections ("FDOC") and proceeding *pro se*, initiated this suit on December 17, 2014 by filing a 42 U.S.C. § 1983 civil rights complaint against Nurse Robinson and FDOC officers Sergeant Buckner and Officer White, Jr. (collectively the "Officers").

2.     Plaintiff alleges that he was assaulted in his cell by the Officers on November 17, 2014. He contends that Nurse Robinson arrived to evaluate him after the use of force, and told him that she did not see anything wrong with him, despite him allegedly having visible injuries.

Plaintiff alleges that Nurse Robinson was deliberately indifferent to his serious medical needs based on her failure to accurately document his injuries.

3.    The undisputed evidence in Plaintiff's medical record shows that Plaintiff did not suffer any serious injuries from the use of force. The only injury documented is mild swelling to the back of the head several hours after Nurse Robinson examined Plaintiff. Because Nurse Robinson was not aware of any injury at the time she examined Plaintiff, she could not have been deliberately indifferent to any serious medical need. In addition, Plaintiff can point to no act or omission on the part of Nurse Robinson that satisfies the causation element of his Eighth Amendment claim.

4.    Nurse Robinson is entitled to summary judgment in her favor.

## MEMORANDUM OF LEGAL AUTHORITY

## I.    BACKGROUND

### A.    Plaintiff's Complaint

The following are Plaintiff's allegations in his Complaint, which are set forth for purposes of this Motion only and not as admissions of fact by Defendant. Plaintiff alleges that, on November 17, 2014, he was placed in an unsanitary cell. (Doc. 1 at 5). He contends that the Officers assaulted him after he asked why his cell was not clean. (*Id.* at 5-7). The Officers allegedly then called Captain Coy, the shift supervisor, who arrived with a camera to record the events and told the Officers to call for medical assistance. (*Id.* at 7). After the Officers called for medical assistance, Nurse Robinson arrived and wheeled Plaintiff into a counseling room. (*Id.* at 7-8).

Plaintiff further alleges that, after he and Nurse Robinson entered the room, Capt. Coy and Ofc. White left and took the camera, and Officer Burtch entered.  (*Id.*). Once the door was

closed and they were out of the audio reach of the camera, Nurse Robinson's demeanor allegedly changed and she asked Plaintiff why he was faking. Plaintiff alleges that he pointed to his head and facial injuries that were clearly noticeable, the cuts on his knee cap and wrist that were bleeding, along with his swollen ankle. Nurse Robinson and Officer Burtch allegedly smiled and said they did not see anything wrong with Plaintiff. (*Id.*). Nurse Robinson then told Officer Burtch she was finished with Plaintiff and he was taken back to his cell. (*Id.* at 9). Plaintiff contends that he received treatment for his injuries from another nurse after the shift change. He alleges that Nurse Robinson did not fill out a use of force report and submit it into his medical file to verify his injuries. (*Id.*). He asserts that he currently suffers from headaches, back pain, knee pain, neck pain, and mental anguish. (*Id.* at 9-10).

**B.    Nurse Robinson's Evaluation Following the Use of Force**

Nurse Robinson testified that, on November 17, 2014, she received a call from Sergeant Buckner asking for a nurse to perform a use of force examination on Plaintiff. (Ex. A, Affidavit of Renee Robinson ¶ 6). The use of force occurred at approximately 9:50 a.m. and she examined Plaintiff at 10:02 a.m. (*Id.*; *see also* Ex. A-1, Farrington Medical Records ("MR") at 1). Plaintiff had no reported injuries and was not in need of medical attention after the use of force. His vital signs were all very similar to other recent encounters. Plaintiff had no cuts, bruises, or swelling in any location. He was ambulatory, alert, and oriented. Plaintiff had no visible injuries and no serious medical need at that time. (Robinson Aff. ¶ 6; Farrington MR at 1-2).

**C.    Plaintiff's Subsequent Medical Records**

On November 17, 2014, between 6:30 and 7:00 p.m., Nurse Dorr examined Plaintiff for his complaints of back pain from the use of force. (Farrington MR at 3). Nurse Dorr documented that Plaintiff had a limping gait. She wrote that there was mild edema (swelling) on the right

posterior scalp, reported muscle pain on the right neck and shoulder, and reported intracostal pain on the right rib cage. (*Id.*).  She gave Plaintiff ibuprofen and instructed him to return if his symptoms worsened. (*Id.* at 4). Nurse Dorr diagramed Plaintiff's reported injuries and noted that there was no bruising, and only mild edema to the back of the head. (*Id.* at 5). Nurse Dorr's documentation of the mild swelling to the back of the head is the only documentation of any injury whatsoever that occurred from the use of force. (Robinson Aff. ¶ 7). No nurse or medical provider has ever found that Plaintiff suffered injuries to his knees, wrists, face, ankles, or back as a result of the November 17, 2014 use of force as he alleges. (*Id.* ¶ 5).

On December 1, 2014, Plaintiff declared a medical emergency for his back pain. (Farrington MR at 6). He was up walking and yelling that he would file a grievance if the nurse did not see him that day. He then laid on his bed and said he could not walk. (*Id.*).  The nurse examined him in his bed. (*Id.* at 7). She noted no swelling or bruising. (*Id.*). Although Plaintiff stated that his right leg was numb and tingling, he had positive pedal pulses indicating that he was getting proper circulation in his legs. He was able to move all extremities. (*Id.*). An appointment was already scheduled with a provider, and Plaintiff was given ibuprofen. (*Id.* at 8).

On December 2, 2014, Plaintiff had an x-ray of his spine and ribs, which showed no evidence of a fracture, collapsed lung, bruised lungs, or pleural effusion. (*Id.* at 9-12). Pleural effusion is a buildup of fluid between the tissues that line the lungs and the chest. (Robinson Aff. ¶ 9). An x-ray of the lumbar spine (lower back) showed normal alignment, no compression fractures, no spondylolisthesis, and no disc space narrowing. (Farrington MR at 11). The report also showed normal perivertebral soft tissues. Vertebral bodies were normal height, and there were no clinically significant abnormalities. (*Id.*). An x-ray of the cervical spine (neck) was also normal. (*Id.* at 12). Soft tissues surrounding the bone were unremarkable. (*Id.*). On December 9,

2014, Plaintiff was examined by Dr. Cesar Calderon. (*Id.* at 13). Dr. Calderon noted that x-rays were normal, and documented no abnormalities. (*Id.*).

On December 14, 2014, Plaintiff submitted a sick call request complaining of severe pain in his <u>left</u> shoulder.  (*Id.* at 14).  However, he had previously complained that his injury was to his <u>right</u> shoulder. (*See id.* at 3, 5).  On December 15, 2014, Plaintiff was seen in sick call for complaints of back pain and shoulder pain. (*Id.* at 15). There was no swelling or bruising, and Plaintiff was given ibuprofen. (*Id.* at 15-16).

On December 16, 2014, Plaintiff declared another medical emergency for complaints of back pain. (*Id.* at 17). When the nurse arrived at his holding cell, Plaintiff stated that he was supposed to have an appointment with his doctor but the officers would not let him go because he refused to put on leg irons. Plaintiff was standing straight and was in no apparent distress. (*Id.*). On December 22, 2014, Plaintiff was seen in sick call for complaints of back pain, shoulder pain, and headaches. (*Id.* at 19-20). He again complained of pain in his left shoulder, although he previously indicated his injury was to his right shoulder. His gait was normal, and there was no swelling or bruising. (*Id.*). The nurse gave him ibuprofen, and noted that he had already been seen by a doctor and had normal x-rays. (*Id.* at 21).

On January 4, 2015, Plaintiff submitted a sick call request complaining of tingling, back pain, and migraine headaches. (*Id.* at 22).  On January 6, 2015, a nurse wrote that Plaintiff had been seen at sick call multiple times for complaints of back and neck pain, that he had seen Dr. Calderon on December 9, 2014, and that all x-rays were normal. (*Id.* at 23). The nurse wrote that she witnessed Plaintiff jump off his top bunk multiple times per day to get his medications without any issues. His gait was always steady, with no signs or symptoms of distress. Plaintiff

stated several times that he would sue if he did not get an MRI. Motrin was ordered per Plaintiff's request. (*Id.*).

On January 13, 2015, Plaintiff submitted another sick call request complaining of pain from the base of his neck down to his tail bone and requesting an MRI. (*Id.* at 24).  On January 16, 2015, he was examined in sick call. (*Id.* at 25). He complained the pain was all over in his back and neck. Plaintiff's gait was normal, and there was no swelling or bruising. (*Id.*). He was instructed to continue ibuprofen. (*Id*. at 26). The nurse noted that there was no new injury. She spoke with the medical doctor in great detail about Plaintiff's concerns. The doctor stated that all tests and physical examinations were within normal limits. Plaintiff walked with a normal gait to receive medications but walked with a shuffling gait when walking to medical. (*Id.*).

On March 13, 2015, Plaintiff submitted another sick call request complaining of back pain. (*Id.* at 27).  Upon examination, Plaintiff's gait was normal, and there was no swelling or bruising. (*Id.* at 28). He was instructed to continue ibuprofen. (*Id.* at 29). The nurse noted that all tests and examinations were within normal limits. Plaintiff was observed standing straight and tall when observed at his cell door, and was observed walking with a steady gait.  (*Id.*). On March 18, 2015, Plaintiff submitted another sick call request complaining of back pain. (*Id.* at 30).  He was examined on March 30, 2015. (*Id.* at 31). The nurse noted that he complained of back pain but had been seen jumping off his bunk and had normal x-rays. Plaintiff's gait was normal, and there was no swelling or bruising. Plaintiff was placed on the line to see a medical provider. (*Id.*). He was instructed to take ibuprofen or acetaminophen. (*Id.* at 32).

On March 22, 2015, Plaintiff submitted another sick call request complaining of severe headaches and back pain and requesting an MRI. (*Id.* at 33). On March 23, 2015, Plaintiff was placed in the infirmary for observation for a possible overdose after he took K-2, or synthetic

marijuana. (*Id.* at 34). Plaintiff was treated for an overdose and released to security the next day, when he was placed in confinement. (*Id.* at 35-36).

On March 26, 2015, Plaintiff was examined by Dr. Calderon for his complaints of back pain. (*Id.* at 37). Dr. Calderon submitted a request for additional x-rays of Plaintiff's neck and back, and ordered ibuprofen. (*Id.* at 38-39).  On March 31, 2015, Plaintiff had additional x-rays. (*Id.* at 40-41). The x-rays for both the cervical spine and lumbar spine were normal. (*Id.*).

Since March 22, 2015, Plaintiff has not submitted a sick call request, complained to Nurse Robinson about any back or neck pain, or requested Tylenol or ibuprofen. (Robinson Aff. ¶ 21). Nurse Robinson observed Plaintiff jumping off his low bunk quickly and without pain on May 15, 2015. Within a reasonable degree of nursing certainty, Plaintiff did not suffer any serious injuries from the use of force on November 17, 2014. He does not have any back or neck injury that warrants further treatment. Physical examinations and x-rays have repeatedly been normal. (*Id.*). All objective evidence indicates that Plaintiff has been malingering regarding any alleged injuries from the use of force. (*Id.* ¶ 5).

## II.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating to the district court the basis for its motion for summary judgment and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any

genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323; *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The party moving for summary judgment may also show the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 324. In assessing whether the movant has met their initial burden, the district court must review the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party. *Hairston*, 9 F.3d at 918.

If the movant successfully meets its initial burden, the non-movant must go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The non-moving party may not rely on the pleadings themselves to defeat a summary judgment motion. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Furthermore, a "mere scintilla of evidence" in favor of the plaintiff's position is insufficient to defeat summary judgment. *Id.* at 252.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Vicks v. Knight*, a panel of the Eleventh Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of two correctional officer-defendants, one who was accused of using excessive force against the inmate and the other who was accused of failing to intervene. 380 F. App'x 847, 852 (11th Cir. 2010). Although the plaintiff-inmate

alleged that an officer assaulted him in his cell, the defendants' version of events directly conflicted with the plaintiff's version set forth in his complaint and own affidavit. *Id.* The defendants' version was corroborated by the objective evidence, including medical records and affidavits that showed that at least two medical professionals examined the plaintiff and found no injuries. *Id.* The Court concluded that, based on the evidence, a reasonable factfinder could not believe that Plaintiff suffered any injury, and thus could not reasonably infer that the officer used anything more than a *de minimum* use of force. *Id.* In this case, as in *Vicks*, Plaintiff's version of events and his account of his injuries are directly contradicted by objective evidence showing that Plaintiff suffered no serious injuries from the use of force.

**B.      Deliberate Indifference Law**

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The United States Constitution does not require 'comfortable prisons' with all the amenities, but it requires that prisons not be 'inhumane.'" *Fernandez v. Crews*, No. 4:13-cv-323-MW/CAS, 2013 WL 3546662, at *2 (N.D. Fla. July 10, 2013) (Slip Copy) (quoting *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003)).

"To prevail on a § 1983 claim alleging a violation of that right, a plaintiff 'must satisfy both an objective and a subjective inquiry.'"  *Valderrama v. Rousseau*, 780 F.3d 1108, 1116

9

(11th Cir. 2015). Objectively, the plaintiff must first show that he had a serious medical need. *Id.* "A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). In addition, "it must be a medical need that, if left unattended, poses a substantial risk of serious harm." *Bell v. Sec'y of Fla. Dep't of Corr.*, 491 F. App'x 57, 59 (11th Cir. 2012) (unpublished) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175-76 (11th Cir. 2011)).

Subjectively, the plaintiff must show that the defendant was deliberately indifferent to his serious medical need. *Valderrama*, 780 F.3d at 1116. Deliberate indifference requires that the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Valderrama*, 780 F.3d at 1116. The standard for the plaintiff to satisfy is very high. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (holding that "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'"); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment."). Decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "classic examples" of matters of medical judgment that are beyond the Eighth Amendment's purview. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

In addition to satisfying the subjective and objective prongs, a plaintiff must also show causation between the alleged deliberate indifference and the plaintiff's injury. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

## C.   Nurse Robinson is Entitled to Summary Judgment

### 1.   *Plaintiff Had No Serious Medical Need*

First, Nurse Robinson is entitled to summary judgment because Plaintiff cannot satisfy the objective prong of the Eighth Amendment inquiry. *See Valderrama*, 780 F.3d at 1116. Plaintiff's injury, if any, was *de minimus*. Nurse Robinson examined him just minutes after the use of force. (Robinson Aff. ¶ 6). At that time, Plaintiff had no reported injuries and was not in need of medical attention. His vital signs were within normal limits. Nurse Robinson observed no cuts, bruises, or swelling in any location. Plaintiff was ambulatory and was alert and oriented. Nurse Robinson did not identify any visible injuries and Plaintiff had no serious medical need at that time. (*Id.*).

Nurse Dorr's examination approximately eight hours later corroborates Nurse Robinson's account. Nurse Dorr reported no bruising, and only mild swelling to the back of Plaintiff's head. Significantly, she did not document the injuries Plaintiff alleges in his Complaint, such as facial injuries, cuts on his knee cap and wrist, or a swollen ankle. (*Compare* Doc. 1 at 8 *with* Farrington MR at 3-5). Because Plaintiff's account of events is flatly contradicted by the record, no reasonable jury could believe it, and this Court should not adopt that version of the facts for purposes of ruling on a summary judgment motion. *See Scott*, 550 U.S. at 380.

Plaintiff's mild swelling of the back of the head was not an objectively serious medical need. *See Blackshear v. Bailey*, No. 3:08-cv-927-J-34JRK, 2010 WL 934002, at *6-9 (M.D. Fla. Mar. 10, 2010) (unpublished) (concluding that defendants were entitled to summary judgment

because undisputed objective evidence showed that the plaintiff's injuries after a use of force incident—a reddened eye, slight swelling of the left side of the head, abrasions on the wrist from hand restraints, and a superficial laceration of the mouth—were not objectively serious medical needs). Here, as in *Blackshear*, to the extent Plaintiff had any injuries, they were superficial. The nurses and treating physician only treated Plaintiff with ibuprofen. (*See* Farrington MR at 8, 15-16, 21, 23, 26, 29, 32, 39). No physician diagnosed any injury or mandated further treatment. *See Goebert*, 510 F.3d at 1326. Plaintiff was twice examined by Dr. Calderon, who ordered x-rays which came back normal. (*See* Farrington MR at 10-13, 37-41). Plaintiff's mild swelling was not a medical need that, if left unattended, posed a substantial risk of serious harm. *See Blackshear*, 2010 WL 934002 at *9; *Bell*, 491 F. App'x at 59.

In addition, Plaintiff's injury was not so obvious that a lay person would recognize the need for attention. *See Goebert*, 510 F.3d at 1326. Nurses repeatedly observed Plaintiff walking with a normal gait, jumping off his bunk, or otherwise appearing uninjured. (Robinson Aff. ¶¶ 5, 8, 12, 14-17, 21). Plaintiff even inconsistently reported which shoulder was actually injured, complaining of pain in his left shoulder in sick call requests after previously complaining that his injury was to his right shoulder. (*Id.* ¶ 11). As in *Blackshear*, Plaintiff's injuries were not objectively serious. *See Blackshear*, 2010 WL 934002 at *6-9. All objective evidence indicates that Plaintiff has been malingering regarding any alleged injuries from the use of force. (Robinson Aff. ¶ 5).

Plaintiff cannot point to any evidence showing that he had a serious medical need at the time Nurse Robinson examined him, and Nurse Dorr's records corroborate Nurse Robinson's account. Neither nurse documented injuries to Plaintiff's face, wrist, knees, or back, although Plaintiff insists that such injuries were obvious. The only way their accounts differ is that Nurse

Dorr documented that mild swelling had appeared on the back of Plaintiff's head by the time she examined him many hours later. Nurse Robinson is entitled to summary judgment.

2. *Nurse Robinson Was Not Deliberately Indifferent*

Even assuming *arguendo* that Plaintiff's mild swelling was a serious medical need, Nurse Robinson was not deliberately indifferent because she did not have subjective knowledge of a risk of serious harm to Plaintiff. *See Valderrama*, 780 F.3d at 1116; *see also Blackshear*, 2010 WL 934002 at *9. At the time Nurse Robinson examined Plaintiff, just minutes after the use of force, he had no observable physical injuries. (*See* Robinson Aff. ¶ 6). It was not until several hours later that Nurse Dorr documented mild swelling to the back of the head. (*Id.* ¶ 7). Nurse Robinson could not have been deliberately indifferent to an injury that was not yet visible. *See Farmer*, 511 U.S. at 837 (holding that deliberate indifference requires that the defendant must *be aware* of facts from which the inference could be drawn that a substantial risk of serious harm exists). Accordingly, she is also entitled to summary judgment because Plaintiff cannot satisfy the subjective prong of an Eighth Amendment claim.

3. *Plaintiff Cannot Show Causation*

Finally, Nurse Robinson is also entitled to summary judgment because Plaintiff cannot show that any act or omission by her caused any alleged injury. *See Mann*, 588 F.3d at 1306-07. Even if Plaintiff could show that Nurse Robinson ignored a risk of harm, he cannot show that she caused any injury or exacerbated any existing injury. Plaintiff has been examined several times by other nurses and medical providers, and none of them documented any serious injuries. Thus, the result would have been the same regardless of what Nurse Robinson did or did not do. Other nurses would have continued to report that Plaintiff had no serious injuries based on their own objective observations, and that the x-ray results were normal. Plaintiff can point to no evidence

13

to satisfy the causation requirement of his Eighth Amendment claim. *See Celotex Corp.*, 477 U.S. at 324 (holding that the party moving for summary judgment may show that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim). Based on all of the above, Nurse Robinson is entitled to summary judgment.

### III.    CONCLUSION

WHEREFORE, Defendant Renee Robinson, LPN requests that this Honorable Court GRANT this Motion for Summary Judgment and dismiss Plaintiff's claims against her with prejudice, and for all other appropriate relief.

This the 24th day of September, 2015.

Respectfully submitted,

/s/ S. Renee Stephens Lundy
S. RENEE STEPHENS LUNDY, ESQ.
Florida Bar No. 0501867
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel: 407-422-4310    Fax: 407-648-0233
RLundy@DRML-Law.com
BrittanK@DRML-Law.com
Denise.Covert@DRML-Law.com
Attorneys for Defendant, Robinson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of September, 2015, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF system, and by regular U.S. mail to the

following:

Tavares L. Farrington, #W07962
Suwanee Correctional Institution
5964 U.S. Hwy. 90
Live Oak, FL 32060

/s/ S. Renee Stephens Lundy
S. RENEE STEPHENS LUNDY, ESQ.
Florida Bar No. 0501867
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel: 407-422-4310    Fax: 407-648-0233
RLundy@DRML-Law.com
BrittanK@DRML-Law.com
Denise.Covert@DRML-Law.com
Attorneys for Defendant, Robinson
.

460842v.1