**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TAVARES L. FARRINGTON,**

**Plaintiff,**

**v.**                                          **Case No. 6:14-cv-02059-GAP-KRS**

**SERGEANT BUTNER, OFFICER**
**WHITE JR., NURSE ROBINSON,**

**Defendants.**
_____/

**DEFENDANTS BUCKNER AND WHITE'S MOTION FOR SUMMARY**
**JUDGMENT**

Now come, Defendants Buckner and White (hereinafter "Defendants"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, to hereby file this Motion for Summary Judgment.  In support thereof, Defendants state as follows:

**Preliminary Statement**

Plaintiff, Tavares Farrington, is an inmate in the custody of the Florida Department of Corrections (hereinafter "the Department"), currently housed at Suwannee Correctional Institution.  Plaintiff filed a Civil Rights Complaint (hereinafter "Complaint") (Doc. 1) pursuant to 42 U.S.C. § 1983 against Department employees, Defendants Buckner and White (hereinafter "Buckner" and "White").  Plaintiff also sued Nurse Robinson, who is represented by other counsel.  At all times relevant to the Complaint, Plaintiff was housed at Tomoka Correctional Institution (hereinafter "Tomoka").  In his Complaint, Plaintiff alleged violations of the Eighth Amendment.  As

relief, Plaintiff seeks $100,000 in damages against each Defendant in their individual

capacity.  (Doc. 17, p. 11).  Plaintiff also requests that the Court order the following

injunctive relief: medical care and treatment for Plaintiff; and that Buckner, White and

Robinson be terminated from their job. (*Id.*)

## Plaintiff's Complaint

Plaintiff alleges that on November 17, 2014, he was placed in an unsanitary cell,

Y-2114S at approximately 10:45 am.  (Doc. 1, p. 5).  Plaintiff claims he told Buckner and

White about the condition of the cell, but that they allegedly shrugged their shoulders and

closed the cell door without removing Plaintiff's hand restraints.  (*Id.*)  Plaintiff claims

Buckner and White walked away from Plaintiff's cell door, leaving Plaintiff restrained.

(*Id.*)  Approximately (5) five minutes later, Buckner and White allegedly returned to the

cell and asked if Plaintiff was "ready to be sanitized." (*Id.*)  Plaintiff claims he asked

whether the Officer in Charge (hereinafter "OIC") could be called about the condition of

the cell.  (*Id.*)  Buckner and White allegedly ignored Plaintiff's inquiry, and radioed the

control room to open Plaintiff's cell door.  (*Id.*)

Plaintiff claims Buckner then charged into Plaintiff's cell, grabbed Plaintiff

around his neck, and slammed the right side of his head into the concrete wall of the cell.

(*Id.*, ps. 5-6).  Officer White allegedly entered Plaintiff's cell and kicked Plaintiff in the

right side of his ribcage and stepped on Plaintiff's right leg behind his knee area.  (*Id.*, p.

6).  Next, Plaintiff alleges that Bucker twisted Plaintiff's hand restraints to inflict pain to

Plaintiff's wrist, then placed his left knee into the center of Plaintiff's spinal area and

struck Plaintiff on the back of the head before again twisting Plaintiff's hand restraints to

inflict pain. (*Id.*)  Plaintiff claims he told Buckner and White that he no longer cared about the condition of the cell. (Doc. 1, p. 7).  Plaintiff alleges Buckner then slapped Plaintiff on the left side of his face, causing Plaintiff to vomit on the cell floor. (*Id.*)

Plaintiff alleges that Buckner then ordered White to call OIC Captain Coy (hereinafter "Coy"). (*Id.*)  Coy arrived at cell Y2-114S with the use of force camera to record the incident. (*Id.*)   Upon Coy's arrival, Plaintiff claims he attempted to walk, but was unable to, due to alleged severe pain, and that Buckner and White then placed Plaintiff in the hallway outside of Y2-114S. (*Id.*)  At that time, Coy allegedly ordered Buckner to call for medical assistance. (*Id.*)

Nurse Robinson arrived at cell Y2-114S and wheeled Plaintiff to the counseling room, accompanied by Coy and White. (*Id.*)  Plaintiff alleges Coy and White exited the room and Officer Chad Burch (hereafter "Burch") entered the room. (*Id.*, p. 8).  Once Coy and White left the room, Nurse Robinson's demeanor allegedly changed and she asked Plaintiff why he was faking his injuries. (*Id.*)  Plaintiff alleges that he pointed to clearly noticeable head and facial injuries, bleeding cuts on his kneecap and wrist, and a swollen ankle. (*Id.*)  Nurse Robinson and Burch allegedly smiled and indicated they did not see anything wrong with Plaintiff. (*Id.*)  Nurse Robinson then told Burch she was finished with Plaintiff and he should be taken back to his cell. (*Id.*, p. 9).  Plaintiff was then wheeled to a different cell, Y-1106S, and placed on the floor. (Doc. 1, p. 9).  During the shift, Plaintiff claims his body would spasm in intense pain and that he asked for, but was denied, medical treatment during the rest of the shift. (*Id.*)  At shift change, Plaintiff alleges he received sufficient medical attention. (*Id.*)

Plaintiff claims that as a result of Buckner's and White's alleged conduct, he suffers from headaches, back pain, neck pain and right knee pain, as well as mentally "due to constantly thinking these officers are going to come back and maliciously kill me."  (Doc. 1, ps. 9-10).

## **DEFENDANTS' STATEMENT OF THE RULE 56(e) MATERIAL FACTS**

1. On November 17, 2014, in Y Dorm, a close management (hereinafter "CM") dorm at Tomoka C.I., Plaintiff was released from Self-Harm Observational Status (hereinafter "SHOS") and transferred to an administrative confinement cell in Wing 2, cell Y2-114S.  (Ex. A, p. 1, Ex. B, p. 1).

2. At approximately 9:38 a.m., Buckner, the Y Dorm Sergeant for the shift, entered cell Y2-114S to prepare the cell for Plaintiff's arrival.  (Ex. A, p. 2, Ex. I).  Buckner removed all debris belonging to the previous occupant, placing the debris in the hallway.  (*Id.*)  Buckner then placed new clothing, including clean boxers, on the mattress in cell Y2-114S.  (Ex. A, p. 2).  New clothing was required to replace the shroud worn by Plaintiff while on SHOS.  (*Id.*)

3. Buckner then conducted a cell inspection of cell Y2-114S to ensure the cell's toilet and sink were in proper working order.  (*Id.*)  Once Buckner determined the cell passed inspection and was ready for Plaintiff's occupancy, he exited cell Y2-114S and left Wing 2 of Y-Dorm.  (Ex. A, p. 2, Ex. I).

4. At approximately 9:43 am, Buckner and White, a Correctional Officer, escorted Plaintiff in hand restraints and his SHOS shroud down Wing 2 in Y-Dorm to cell Y2-114S.  (Ex. A, p. 2, Ex. B, p. 2, Ex. I).

5.  Buckner and Farrington walked in front of White.  (Ex. B, p. 2, Ex. I).  White used his left arm to grasp Plaintiff's right arm as Plaintiff was escorted down Wing 2.  (*Id.*)

6.  When they reached cell Y2-114S, Plaintiff noticed a book lying on the hallway floor and requested the book.  (Ex. A, p. 2).  Buckner searched the book, and finding no contraband, tossed the book onto the mattress of cell Y2-114S.  (*Id.*)

7.  Plaintiff entered cell Y2-114S voluntarily, without incident, and Buckner secured the cell door behind Plaintiff at approximately 9:43:35 am.  (Ex. A, p. 2, Ex. B, p. 2).  Buckner then left Wing 2 to complete security checks.  (Ex. A, p. 2, Ex. I).

8.  White remained at the door of cell Y2-114S and ordered Plaintiff three times to place his hands in the food flap and relinquish the hand restraints.  (Ex. B, p.2).  Each time, Plaintiff refused to comply with White's lawful commands to permit the removal of his hand restraints.  (*Id.*)

9.  Discovering that his radio battery died, White secured the food flap on cell Y2-114S and left Wing 2 to inform Buckner that Plaintiff refused to comply with his commands to remove the hand restraints.  (Ex. A, p. 2, Ex. B, p. 2, Ex. I).

10. At approximately 9:48:52, Buckner and White returned to Plaintiff's cell.  (Ex. A, p. 2, Ex. B, p. 2, Ex. I).

11. Buckner twice ordered Plaintiff to place his hands outside the food flap so Plaintiff's hand restraints could be removed.  (Ex. A, ps. 2-3, Ex. B, p. 2).  At this time, Plaintiff was locked in his cell, restrained, with his hands behind his back, and his back facing the door.  (Ex. B, p. 2).

12. After Plaintiff refused to comply with Buckner's commands to approach the food flap and surrender the hand restraints, Buckner then ordered White to radio the control room to open Plaintiff's cell door.  (Ex. A, p. 3, Ex. B, p. 2).

13. F.A.C. 33-602.220(6) requires that two (2) officers be present before a cell door can be opened to remove a restrained inmate.  (Ex. C, Ex. D, p. 3).

14. As the control room opened the cell door of Y2-114S, Plaintiff remained with his back towards the cell door.  (Ex. B, p. 2).  Buckner commanded Plaintiff to back up towards the cell door so a tether could be attached to secure Plaintiff while the restraints were removed.  (Ex. B, p. 2).  Plaintiff did not comply with Buckner's command.  (Ex. A, p. 3, Ex. B, p. 2).

15. At approximately 9:49:26 am, Buckner stepped over the door threshold to apply a tether to Plaintiff's hand restraints and ordered Plaintiff to remain stationary.  (Ex. A, p. 3, Ex. I).

16. Buckner then placed his left hand on Plaintiff's left bicep.  At that time, White was holding the tether outside the cell.  (Ex. A, p. 3, Ex. B, ps. 2-3).  Buckner then reached his right hand back towards the doorway to retrieve the tether from White.  (Ex. A, p. 3, Ex. B, p. 3).

17. When Buckner reached for the tether, Plaintiff became actively and physically resistant, attempting to pull his left arm from Buckner's grasp. (Ex. A, p. 3, Ex. B, p. 3).

18. As Buckner had a firm, custodial hold on Plaintiff's left arm, Buckner was able to maintain control of Plaintiff's left arm.  (Ex. A, p. 3).

19. Buckner ordered Plaintiff to stop resisting Buckner's hold, but Plaintiff refused and continued to physically resist.  (Ex. A, p. 3, Ex. B, p. 2).

20. As a result of Plaintiff's physical resistance to Buckner's lawful commands, Buckner was required to use reactionary force pursuant to F.A.C. 33-602.210.  (Ex. A, p. 4).

21. F.A.C. 33-602.210 authorizes the use of non-deadly physical force, when reasonably necessary to overcome an inmate's physical resistance to a lawful command.  (Ex. C). Pursuant to 33-602.210(8), a reactionary use of force occurs when circumstances do not permit prior approval, such as when an inmate pulls away during a custodial escort or attempts to assault an officer.  (Ex. C).

22. Buckner grasped Plaintiff's right arm with his right hand and guided Plaintiff to the ground in a controlled manner.  (Ex. A, p. 4, Ex. B, p. 3).  Buckner restrained Plaintiff on the ground and no additional force was used.  (Ex. A, p. 4).

23. This use of force was an appropriate reactionary use of force, pursuant to F.A.C. 33-602.210(8).  (Ex. D, Ex. E, Ex. F).  It was reviewed and approved by the Office of the Inspector General.  (*Id.*)

24. Buckner did not assault, threaten, or abuse Plaintiff in any way.  (Ex. A, p. 4). Buckner simply used reactionary force when Plaintiff became physically resistant to Buckner's lawful commands.  (Ex. A, p. 4, Ex. B, p. 4).

25. White then entered the doorway of cell Y2-114S.  (Ex. B, p. 3, Ex. I).  At that time, Buckner ordered White to call Coy to notify him of the reactionary use of force used against Plaintiff.  (Ex. A, p. 4, Ex. B, p. 3).

26. During the reactionary use of force, Plaintiff's SHOS shroud fell off, leaving him exposed.  (Ex. A, p. 4, Ex. B, p. 3).  Department policy prohibits nudity during the post use of force filming on camera.

27. Buckner ordered White to enter Plaintiff's cell to clothe Plaintiff with the boxers that Buckner had earlier left on the mattress.  (Ex. A, p. 4, Ex. B, p. 3).  White did not use any force on Plaintiff or threaten, assault, or abuse him.  (Ex. B, p. 4)  White simply entered Plaintiff's cell at the direction of Buckner to place boxers on Plaintiff.  (*Id.*)

28. At approximately 9:53:25, Coy arrived at cell Y2-114S and observed Buckner restraining Plaintiff on the ground and Plaintiff in hand restraints.  (Ex. D, p. 2, Ex. I).  Coy did not observe any unsanitary conditions in the cell Y2-114S.  (Ex. D, p. 2)

29. Coy instructed White and Buckner to assist Plaintiff, who was restrained from behind, to his feet.  (Ex. A, p. 4, Ex. B, p. 3, Ex. D, p. 2).  Once Plaintiff stood up, no visible injuries were observed on Plaintiff. (Ex. A, p. 5, Ex. B, p. 4, Ex. D, p. 2).

30.  With the help of Buckner and White, Plaintiff took several steps into hallway, then dropped to his knees.  (*Id.*) At that time, Buckner left the hallway and had no further involvement with this use of force incident.  (Ex. A, p. 4, Ex. I).

31. Pursuant to F.A.C. 33-602.210(4)(c), after a reactionary use of force occurs, a video camera is brought to the scene to videotape, uninterrupted, until the incident is under control, and the involved inmate is seen in medical and secured in a cell.  (Ex. C).

32. At approximately 9:55:21, White retrieved the handheld camera for the post use of force evaluation.  (Ex. B, p. 3-4, Ex. D, p. 2, Ex. I).  For the remainder of the post use

of force procedure, White filmed Plaintiff until his placement in a new cell, Y1-1106. (Ex. B, p. 4).

33. Plaintiff stated he was unable to walk, so Coy ordered that a wheelchair be brought from medical to their location.  (Ex. D, p. 2).

34. At approximately 10:00 am, Nurse Robinson arrived with the wheelchair from medical.  (Ex. D, p. 2, Ex. I).  Burch and Coy lifted Plaintiff into the wheelchair.  (*Id.*)  Then, Nurse Robinson, accompanied by Coy, Burch, and White, wheeled Plaintiff down to the medical examination room.  (*Id.*)

35. At approximately 10:02 am, Nurse Robinson conducted a post use of force examination on Plaintiff.  (*Id.*)  Plaintiff reported no injuries during this examination, and required no medical attention after.  (Ex. E).  Nurse Robinson did not observe any cuts, bruises, or swelling in any location.  (*Id.*)  Plaintiff had no visible injuries. (*Id.*)  Plaintiff was ambulatory, alert, and oriented, and had no serious medical need.  (*Id.*)

36. Following his post use of force examination, Plaintiff was transported to cell Y1-1106.  (Ex. D, p. 2, Ex. I).  At that time, Plaintiff's hand restraints were removed, and the cell door secured.  (Ex. I). As soon as Plaintiff's hand restraints are removed, the hand-held video clearly shows him immediately standing upright and moving around cell Y1-1106.  (Ex. D, p. 3, Ex. I).  Plaintiff showed no signs of being in pain or having any restrictions to his movement.  At that point, the handheld video stopped filming. (*Id.*)

37. Several hours later, between 6:30 and 7:00 pm, Nurse Dorr examined Plaintiff for his complaints that he had back pain from the reactionary use of force.  (Ex. H, p. 1).

Nurse Dorr documented that Plaintiff exhibited a limping gait, that he had a mild

edema (swelling) on the right posterior scalp, and that he reported muscle pain on the

right neck and shoulder and intracostal pain on the right rib cage.  Nurse Dorr

diagrammed Plaintiff's reported injuries and noted that she observed only mild edema

to the back of the head, but no bruising.  (*Id.*)  Nurse Dorr's documentation of the

mild swelling to the back of the head is the only documentation of any injury

whatsoever that allegedly occurred from the reactionary use of force.  (*Id.*)

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper, where the pleadings and sworn statements show

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986); *Moton v. Cowart,* 631 F.3d 1337, 1341 (11th Cir. 2011); *Swisher

Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008).  Summary judgment is also

warranted where the nonmoving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

The moving party bears the initial burden of demonstrating an absence of

evidence to support the nonmoving party's case.  *Id.* at 323.  Once the moving party

meets this burden, the burden shifts to the nonmoving party to present evidence

demonstrating that a genuine issue of material fact exists.  *Id.* at 324. The mere existence

of some alleged factual dispute between the Plaintiff and the Defendants will not defeat

an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty

*Lobby, Inc.*, 477 U.S. 242, 248 (1986) (the requirement is that there is no genuine issue of material fact); *Celotex*, 477 U.S. at 324 (a "scintilla" of evidence or conclusory allegations is insufficient, citing Fed. R. Civ. P. 56(e)).

"Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record." *Solliday v. Federal Officers*, 413 Fed. Appx. 206, 207 (11th Cir. 2011) quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); Fed. R. Civ. P. 56(e); *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(there is no genuine issue for trial if record, taken as a whole, would not lead a rational trier of fact to find in favor of non-moving party).  The nonmoving party must show more than a "metaphysical doubt" regarding the material facts.  *Matsushita*, 475 U.S.at 586-87.

Although the evidence and reasonable inferences drawn there from are viewed in the light most favorable to the nonmoving party, "[a] court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002), quoting *Mize*, 93 F.3d at 742 and *Matsushita*, 475 U.S. at 592.

### EXCESSIVE FORCE CLAIMS AND THE EIGHTH AMENDMENT

To prove an Eighth Amendment violation, a prisoner must show a deprivation of objectively sufficient seriousness to be of constitutional concern and that the prison

official acted with a sufficiently culpable state of mind, knowing of, yet disregarding, an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); see also *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). The inmate must satisfy both the objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

In excessive force claims, the main inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm." *Kornagay v. Burt*, Slip Copy, 2011 WL 839496, *10 (N.D. Fla. 2011)(citation omitted); see also *Williams v. Slack*, Slip Copy, 2011 WL 3684543, *2 (11th Cir. 2011)(force in a custodial setting does not violate the Eighth Amendment if applied in good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm); *Johnson v. Breeden*, 280 F.3d 1308, 1322 (11th Cir. 2002) (force is not Eighth Amendment violation unless "sadistically and maliciously applied for the very purpose of causing harm"); *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002); *Honors v. Judd*, Slip Copy, 2011 WL 3498287, *3 (M.D. Fla. 2011).

To determine whether force was applied maliciously or sadistically, Courts examine: (a) the need for application of force, (b) the relationship between that need and the amount of force used, (c) the extent of injury inflicted upon the prisoner; (d) the extent of threat to the safety of staff and inmates; and (e) any efforts made to temper the severity of a forceful response. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007); *see also Williams*, 2011 WL 3684543, *2. When applying the *Cockrell* factors,

the Eleventh Circuit gives "wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Cockrell*, 510 F.3d at 1311; *see also Williams*, 2011 WL 3684543, *2; *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

Compliance with prison regulations in administering force or restraint provides evidence that prison officials acted in good faith and not to inflict pain. *Campbell v. Sikes*, 169 F.3d 1353, 1376 (11th Cir. 1999).

In the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." *Palmer v. Johnson*, No. 2:09-CV-604-FTM-29DN, 2011 WL 307620, at *3 (M.D. Fla. Jan. 28, 2011) citing *Ort v. White,* 813 F.2d 318, 324–325 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. *Williams v. Burton,* 943 F.2d 1572, 1575 (11th Cir.1991) (citations omitted).

Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used. *Thomas v. Pieniozek*, No. 09-14255-

CIV, 2011 WL 810696, at *2 (S.D. Fla. Feb. 1, 2011) *report and recommendation adopted*, No. 09-14255-CIV, 2011 WL 777894 (S.D. Fla. Mar. 1, 2011)(citation omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Enriquez v. Landers*, No. 2:02CV510FTM-VMC-SPC, 2005 WL 2405829, at *8 (M.D. Fla. Sept. 29, 2005) citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973)) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  Although the absence of serious injury alone is insufficient to dismiss a prisoner's Eighth Amendment claim, the absence of any injury or a showing of *de minimis* injury is relevant evidence of a *de minimis* use of force. *Id.*

## PLAINTIFF CANNOT ESTABLISH DEFENDANTS VIOLATED THE EIGHTH AMENDMENT

F.A.C. 33-602.210 authorizes the use of non-deadly physical force, when reasonably necessary to overcome an inmate's physical resistance to a lawful command. (Ex. C).  On November 17, 2014, Plaintiff admits that he refused to comply with the lawful commands of Buckner and White to remove the hand restraints.  (Ex. G, ps. 65-7, 70-2).  Plaintiff alleges he failed to comply with Defendants' lawful commands because of the condition of the cell.  (Doc. 1, p. 5).  Cell Y2-114S was not in an unsanitary condition.  (Ex. D, p. 3).  However, even if the condition of the cell was unsanitary, Plaintiff would be still be required to comply with the lawful commands of Buckner and White.  (Ex. D, ps. 3-4).

F.A.C. 33-602.220(6) requires that two (2) officers to be present before a cell door can be opened to remove a restrained inmate.  (Ex. C, Ex. D, p. 3).  In his

deposition, Plaintiff admitted that the cell door can be opened if two officers are present. (Ex. G, p. 46).

Plaintiff admits that he moved towards the back of the cell when Buckner entered. (Ex. G, ps. 85-86).  Once in the cell, Buckner grasped Plaintiff's left bicep with his left hand.  (Ex. A, p. 3, Ex. B, ps. 2-3, Ex. G, p. 77).  Plaintiff then became physically resistant to Buckner's command to remain stationary.  (Ex. A, p. 3, Ex. B, p. 3).  Buckner had to use reactionary force to overcome Plaintiff's physical resistance.  (*Id.*)  Pursuant to 33-602.210(8), a reactionary use of force occurs when circumstances do not permit prior approval, such as when an inmate pulls away during a custodial escort or attempts to assault an officer.  (Ex. C).

Once Buckner was able to restrain Plaintiff on the ground, Buckner ordered White to enter Plaintiff's cell and place boxers on Plaintiff, who became exposed during the reactionary use of force.  (Ex. A, p. 4, Ex. B, p. 3, Ex. G, ps. 92-94).  Pursuant to Department policy, all nudity is to be avoided during the post use of force filming.  White did not use any force on Plaintiff, he merely entered the cell at the direction of White to place the boxers on Plaintiff.   (Ex. A, p. 4, Ex. B, p. 3).

Force in a custodial setting does not violate the Eighth Amendment if applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically cause harm.  *Williams*, 2011 WL 3684543, *2.  "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."  *Bennett*, 893 F.2d at 1533.  Buckner did not use force maliciously and sadistically upon Plaintiff, but simply used reactionary force on Plaintiff,

pursuant to F.A.C. 33-602.210, because Plaintiff failed to comply with his lawful commands and became physically resistant.  Moreover, Buckner's application of force was a good faith effort to maintain and restore discipline.  See *Thomas*, 2011 WL 810696, at *2.

As to White, he did not use force on Plaintiff at all. His only involvement was, in the immediate aftermath of the use of force, to enter the cell at the direction of Buckner and place boxers on Plaintiff, pursuant to Department policy prohibiting nudity.

The absence of a physical injury is a relevant factor to the inquiry of whether force was *de minimis*. *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. 2010); *Skrtich*, 280 F.3d at 1302.  In this case, the only documented injury that allegedly resulted from the November 17, 2014 use of force, was the mild edema to the back of Plaintiff's head. (Ex. H).  Nurse Dorr's documentation of the mild swelling to the back of the head is the only documentation of any injury that allegedly occurred from the reactionary use of force.  (*Id.*)

In his Complaint, Plaintiff asserts that he was injured during the use of force; however, Plaintiff's medical records show that, at most, he sustained *de minimis* injuries. (Ex. E, Ex. H).  This is clearly a case involving the absence of any injury or the showing of only *de minimis* injury, supporting a finding that the use of force was *de minimis*.

Finally, Plaintiff contradicted so many of his allegations in the Complaint, which he swore to under oath, and the videos (Ex. I) clearly show that numerous material claims he made under oath are false. Plaintiff's claims are so implausible that they should not be permitted to go to a jury.  *Cuesta*, 285 F.3d at 971 ("[a] court need not permit a case to go

to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible"), quoting *Mize*, 93 F.3d at 742 and *Matsushita*, 475 U.S. at 592.  "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For the factual issues to be considered genuine, they must have a real basis in the record."  *Solliday*, 413 Fed. Appx. at 207 (emphasis added), quoting *Mize*, 93 F. 3d at 742; Fed. R. Civ. P. 56(e).

## QUALIFIED IMMUNITY

To the extent Plaintiff sued Defendant in his individual capacity, he is entitled to qualified immunity. "[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), quoting *Saucier v. Katz*, 533 U.S. 194, 209 (2001).  To defeat qualified immunity, a plaintiff must show that, when the defendant acted, the right was so clearly established that a reasonable official would have understood his acts were unlawful.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rodgers v. Horsely*, 39 F. 3d 308, 310 (11th Cir. 1994).  "Qualified immunity offers complete protection for government officials sued in their individual capacities, if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  Qualified immunity allows government officials to do their discretionary duties, without fear of personal liability or harassing litigation, and protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) *quoting Lee* that qualified immunity is inappropriate. *Id.* To determine whether a plaintiff has met this burden, courts apply the two-part test from *Saucier*:

> (1) 'taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' and (2) if a constitutional right would have been violated under the Plaintiff's version of the facts, the court must then determine 'whether the right was clearly established.'

*Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003).

The Supreme Court held that the analysis need not be done in the order stated in *Saucier* but rather, courts are "permitted to exercise sound discretion" in deciding which prong to address first. *Pearson v. Callahan*, 555 U.S. 223 (2009); see also *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).

Whether a Defendant truly violated a constitutional right is a "necessary concomitant" to the question of qualified immunity, because without such violation, there is certainly no violation of a clearly established law. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). As Plaintiff failed to demonstrate that a constitutional violation occurred, based on the above analysis, Buckner and White are entitled to qualified immunity.

## PLAINTIFF MAY NOT SUE BUCKNER AND WHITE IN THEIR INDIVIDUAL CAPACITIES FOR MONETARY DAMAGES, ABSENT PHYSICAL INJURY

A prerequisite for an inmate to bring a civil action in federal court for mental or emotional injuries suffered while in custody is a showing of a physical injury. 42 U.S.C. § 1997e(e). "No federal civil action may be brought by a prisoner confined in a jail,

prison, or other correctional facility, for mental or emotional injury suffered while in

custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical

injury requirement applies to all federal claims, including constitutional claims. *Harris v.

Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000).

The Eleventh Circuit has also held that compensatory and punitive damages are

not available, absent a physical injury. *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir.

2000)("[C]ompensatory damages under § 1983 may be awarded only based on actual

injuries caused by the defendant and cannot be presumed or based on the abstract value

of the constitutional rights that the defendant violated."); *Al-Amin v. Smith*, 637 F.3d

1192 (2011)(dismissal of punitive damages claim Eleventh Circuit precedents have

affirmed district court dismissals of punitive damage claims under the PLRA because the

plaintiffs failed to meet § 1997e(e) physical injury requirement).

Physical injury is not any injury, no matter how small. "[T]o avoid dismissal

under § 1997e(e), a prisoner's claims for emotional or mental injury must be

accompanied by allegations of physical injuries that are greater than de minimis."

*Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir.

2002); *Blackshear v. Bailey*, 2010 WL 934002, *10 (M.D. Fla. 2010); *Beard v. Green*,

2010 WL 411084, *4 (S.D. Fla. 2010); *McCoy v. Fortune*, 2010 WL 1383716, *2 (N.D.

Fla.).  This supports the goal of the PLRA, which is "to reduce the number of frivolous

cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free

time with which to pursue their complaints." *Napier v. Preslicka*, 314 F.3d 528, 531

(11th Cir. 2002).

19

In his Complaint, Plaintiff alleges that he suffers mentally "due to constantly thinking these officers are going to come back and maliciously kill me." (Doc. 1, ps. 9-10). To the extent this allegation is sufficient to claim a mental injury under 42 U.S.C. § 1997e(e), Plaintiff's physical injuries are *de minimis* and superficial. *Mitchell*, 294 F.3d at 1312-1313; Blackshear, 2010 WL 934002 at * 10. Thus, Plaintiff is not entitled to relief for his mental injuries absent a showing of physical injury.

## PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF AGAINST THE DEPARTMENT

The persons from whom injunctive relief is sought must be parties to the underlying action. *See In re Infant Formula Antitrust Litigation, MDL 878 v. Abbott Laboratories,* 72 F.3d 842, 842-43 (11th Cir.1995) (court lacks subject matter jurisdiction to issue preliminary or permanent injunction against non-party); see also *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.,* 96 F.3d 1390, 1394 (5th Cir.1996) (district court not authorized to grant injunctive relief against non-parties). To the extent Plaintiff seeks injunctive relief against a non-party, the Department, injunctive relief is not authorized.

## CONCLUSION

Based on the foregoing, Defendants Buckner and White respectfully request that this Court grant summary judgment in their favor.

October 4, 2015                                      PAMELA JO BONDI

                                                              ATTORNEY GENERAL

                                                              /s/ Katelyn B. Wright
                                                              Katelyn B. Wright
                                                              Assistant Attorney General

20

Florida Bar No. 112298
Office of the Attorney General
General Civil Litigation Tampa
501 East Kennedy Blvd., Suite
1100 Tampa, Florida 33602
Tel: (813) 233-2880
Fax:  (813) 233-2886
katelyn.wright@myfloridalegal.com
Counsel for Defendants
Sergeant Buckner and Officer White
Jr.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2015, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system which will send a notice of

electronic filing to those persons capable of receiving such notice of electronic filing:

Renee Stephens Lundy, Esq., rlundy@drml-law.com.  I further certify that I caused to be

hand delivered the foregoing document and notice of electronic filing to the following

non-CM/ECF participant: Tavares L. Farrington, DC # W07962, 5964 U.S. Highway 90,

Live Oak, Florida, 32060.


/s/ Katelyn Wright
Katelyn Wright

21