UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TAVARES L. FARRINGTON,

    Plaintiff,

v.    CASE NO.6:14-cv-2059-Orl-31KRS

SERGEANT BUTNER, et al.,

    Defendants.

_____

**ORDER**

This case is before the Court on Defendant Robinson's Motion for Summary Judgment (Doc. 35), Defendants Buckner[1] and White's Motion for Summary Judgment (Doc. 36), Plaintiff's Response in Opposition to Defendant Robinson's Motion for Summary Judgment (Doc. 42), Plaintiff's Declaration (43), Plaintiff's Response in Opposition to Defendant Buckner and White's Motion for Summary Judgment (Doc. 48), and Plaintiff's Exhibits in Support of Response in Opposition to Defendant Buckner and White's Motion for Summary Judgment (Doc. 49). [2]  As discussed hereinafter, Defendants Buckner and White's Motion for Summary Judgment is denied and Defendant Robinson's Motion for Summary Judgment is granted.

---

[1] The correct spelling of Defendant Butner's name is Buckner.  The Court will use the correct spelling of Defendant Buckner's name in this Order.

[2] Defendants Buckner and White also submitted DVDs, which show actions occurring outside of Plaintiff's cell before and after the incident in question.

I.     **FACTUAL BACKGROUND**[3]

Plaintiff, a prisoner of the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Buckner and White, correctional officers, used excessive force against him and that Defendant Robinson failed to provide adequate medical care for his serious medical needs in violation of the Eighth Amendment.  (Doc. 1 at 4).

According to Plaintiff, on November 17, 2014, while incarcerated at Tomoka Correctional Institution, Defendants Buckner and White moved Plaintiff to an unsanitary cell.  (*Id*. at 5).  Plaintiff asked Defendants Buckner and White why the cell had not been properly sanitized before he was placed in it.  (*Id.*).  In response, Defendants shrugged their shoulders and shut the cell door after which Defendant White said, "We got something to sanitize the cell with, just wait a minute."  (*Id.*).  Defendant Buckner left the wing to complete security checks.  (Doc. 36-1 at 3).

Defendant White asked Plaintiff three times to place his hands in the food flap on the cell door to allow Defendant White to remove Plaintiff's handcuffs.  (Doc. 36-7 at 2-4).  Plaintiff refused to comply, telling Defendant White that he would not give him the

---

[3] In considering the motion for summary judgment, the statement of facts is derived from the complaint and evidence submitted by Plaintiff and Defendants in support of, or in opposition to, the dispositive motions.  The evidence is construed in the light most favorable to Plaintiff.

2

handcuffs until the captain came to the cell to see it. (*Id*. at 2). Defendant White closed the flap and walked away. (*Id*.)

Defendants Buckner and White returned to the cell approximately five minutes later at which time they asked Plaintiff if he was ready to be sanitized. (Doc. 1 at 5). In response, Plaintiff asked for the officer in charge to be called so he could receive a clean cell. (*Id*.). Defendant Buckner responded by cursing Plaintiff and telling him that Defendant Buckner ran things at the facility, not Plaintiff. (*Id*). Defendant Buckner asked Plaintiff to place his hands in the flap so he could remove the handcuffs, but Plaintiff refused to do so until they got the captain. (Doc. 36-7 at 5). Defendant Buckner directed Plaintiff's cell door be opened. (Doc. 1 at 5; Doc. 36-7 at 7; Doc. 36-1 at 4; Doc. 36-2 at 2).

According to Plaintiff, he went to the back of the cell near the toilet area, and Defendant Buckner charged into the cell and grabbed Plaintiff's left shoulder and smashed Plaintiff's head into the wall. (Doc. 1 at 5; Doc. 36-7 at 5, 8). Plaintiff admits he moved and questioned Defendant Buckner when he entered the cell, but Plaintiff denies he pulled away from Defendant Buckner when he grabbed him. (Doc. 36-7 at 9-10). Defendant Buckner then grabbed Plaintiff's left leg and arm, picked Plaintiff up, and slammed him onto the concrete floor. (Doc. 1 at 6; Doc. 36-7 at 8). Plaintiff felt severe pain on the right side of his face, neck, and head. (Doc. 1 at 6).

Defendant White subsequently entered the cell and kicked Plaintiff in the right side of his rib cage and stepped on his right leg behind the knee with his full weight, resulting in severe pain. (*Id*.; Doc. 36-7 at 13). Defendant White placed boxer shorts on

3

Plaintiff because the shroud he was wearing came off during the altercation and Plaintiff was naked. (Doc. 36-7 at 11-12). Defendant Buckner said, "Is it sanitized enough for you, you little piece [sic] of shit, hah nigger[?]" (Doc. 1 at 6). At the same time, Defendant Buckner grabbed Plaintiff's handcuffs and twisted them. (*Id*.). He also put his knee into the center of Plaintiff's back around his spinal area and hit the back of Plaintiff's head, causing his vision to blur. (*Id*.; Doc. 36-7 at 12-13). Defendant Buckner twisted Plaintiff's handcuffs again while placing his hand on Plaintiff's left elbow, which caused his shoulder to pop. (Doc. 1 at 6).

Defendant Buckner continued to place his weight on Plaintiff's back, rendering Plaintiff helpless. (*Id*. at 6-7). Plaintiff cried out for Defendants Buckner and White to stop and said he did not care if the cell was sanitized as long as they stopped. (*Id*.). Defendant Buckner responded by telling Plaintiff that no one could help him now and then slapping Plaintiff on the left side of his face, which caused Plaintiff to become dizzy and vomit. (*Id*. at 7). Plaintiff did not resist throughout the incident. (*Id*.).

Defendant White called Captain Coy to come to the cell after the incident pursuant to Defendant Buckner's instruction. (*Id*.). Plaintiff tried to tell Defendant Buckner that his entire right side was in severe pain and that he could not feel his toes, but Defendant Buckner told Plaintiff to shut up. (*Id*.). When Captain Coy arrived with the camera to record subsequent events, Plaintiff could not move his feet and he had severe pain from his neck to his tailbone. (*Id*.).

4

Officers dragged Plaintiff from the cell into the hallway. (*Id.*). Captain Coy gave Defendant White the camera, directed him to continue recording, and ordered Defendant Buckner to call for medical assistance and for a wheelchair to be brought to the cell. (*Id.*; Doc. 36-4 at 2).

Defendant Robinson, a nurse, responded to Plaintiff's cell approximately five to ten minutes later. (*Id.*). When Defendant Robinson arrived at Plaintiff's cell, Plaintiff told her he could not walk. (*Id.* at 8). Defendant Robinson requested a wheelchair to transport Plaintiff. (*Id.*). Once placed in the wheelchair, Plaintiff complained that he could not properly sit on his right side and was in severe pain. (*Id.*). Defendant Robinson "aggressively" adjusted Plaintiff's feet on the wheelchair, and Plaintiff, accompanied by Captain Coy and Defendant White, was taken to the Y-dormitory counseling room instead of medical triage. (*Id.*).

Plaintiff maintains that when Captain Coy and Defendant White exited the room and Officer Burtch entered the room, Defendant Robinson asked Plaintiff why he was faking and said there was nothing wrong with him. (*Id.*). In response, Plaintiff told Defendant Robinson that he had injuries to his head and face, cuts around his kneecap and wrist that were bleeding, a swollen ankle, and severe pain on his right side. (*Id.*). Defendant Robinson asked Officer Burtch if he saw anything, and when Officer Burtch responded negatively, she said that she did not see anything wrong with Plaintiff. (*Id.*). Plaintiff then told Defendant Robinson that he felt a sharp pain on the right side of his back along his spinal cord that radiated from his neck to his tailbone. (*Id.* at 9).

According to Plaintiff, Defendant Robinson responded by saying, "It doesn't matter what you're saying because I don't see nothing wrong with you." (*Id*.).

Plaintiff was then moved to another cell and asked Defendants Buckner and White to receive medical treatment throughout the remainder of their shift because Plaintiff's body would "spasm in intense pain" when he moved a certain way. (*Id*.). Once Defendants Buckner and White's shift ended, another officer took Plaintiff to medical triage, and Plaintiff received "sufficient medical treatment" for his medical needs. (*Id*.). Plaintiff contends he currently suffers from headaches, back pain, and knee pain. (*Id*. at 9-10).

Defendant Robinson attests that the use of force occurred at 9:50 a.m., and she examined Plaintiff at 10:02 a.m. (Doc. 35-1 at 3). According to Defendant Robinson, Plaintiff did not report any injuries and did not require medical attention after the use of force. (*Id*.). Defendant Robinson documented in Plaintiff's medical records that she did not observe any cuts, bruises, or swelling on Plaintiff and that Plaintiff was ambulatory and alert. (*Id*.; *see also* Doc. 35-2 at 1-2).

## II. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010) (citing Fed. R. Civ. P. 56). At this stage of the proceedings, "the evidence and all reasonable inferences from that

evidence are viewed in the light most favorable to the nonmovant, but those inferences are drawn 'only 'to the extent supportable by the record.'" *Id.* (quoting *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010). The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the initial burden is met, then the nonmoving party may not rest on his pleadings, but must 'go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', designate 'specific facts showing that there is a genuine issue for trial' in order to avoid summary judgment." *Wells v. Cramer*, 262 F. App'x 184, 186-87 (11th Cir. 2008) (quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281-82 (11th Cir. 1999)).

> Rule 56(c)(1) provides as follows:
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). The nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In other words, "[f]ollowing discovery, the plaintiff opposing summary judgment may not rely

7

on facts in the complaint, but must raise genuine issues of material fact to counter facts supporting the defendant's claim of qualified immunity." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (citing *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir. 1990)). "Though the facts alleged in an inmate's sworn pleading are sufficient to defeat a motion for summary judgment and a separate affidavit is not necessary, mere conclusions and unsupported factual allegations are legally insufficient to defeat summary judgment." *Wells*, 262 F. App'x at 187 (citing *Sammons v. Taylor*, 967 F.2d 1533, 1544 n. 5 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III.  ANALYSIS

#### A.  Excessive Force

Defendants Buckner and White contend that they are entitled to summary judgment based on the doctrine of qualified immunity. (Doc. 36 at 18). Defendants Buckner and White maintain Plaintiff has not demonstrated that they used excessive force. (*Id*. at 14-18). Specifically, Defendant Buckner argues that he used force against Plaintiff in a good faith effort to maintain or restore discipline and Defendant White attests he did not use any force against Plaintiff. (*Id*. at 15-16).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted). To be entitled to qualified immunity, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983)). If the defendant satisfies this burden, then the Court must grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers; and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009). Courts are permitted to exercise discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236.

Based on the allegations in the complaint, the Court concludes that Defendants Buckner and White were acting in the scope of their discretionary authority when the incident occurred. Consequently, the Court next considers whether Plaintiff has established a constitutional violation.

The Eighth Amendment permits the use of force "in a custodial setting as long as it is 'applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm.'" *Stallworth v. Tyson*, 578 F. App'x 948, 952 (11th Cir. 2014) (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21(1986)). To determine whether the force was used maliciously and sadistically to cause harm, courts consider:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them."

*Id.* at 953 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)). In considering these factors, courts must "give 'a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.'" *Id.* (quoting *Fennell v. Gilstrap,* 559 F.3d 1212, 1217 (11th Cir. 2009)). "A prisoner may avoid summary judgment, 'only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain.'" *Id.* (quoting *Brown v. Smith,* 813 F.2d 1187, 1188 (11th Cir. 1987)).

> The absence of serious injury does not necessarily preclude a claim under the Eighth Amendment, yet the "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."

*Id.* (quoting *Wilkins v. Gaddy,* 559 U.S. 34, 37–38 (2010)). "[T]he extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied," however, the injury alone does not determine the viability of an Eighth Amendment claim. *Id.* (citing *Wilkins*, 559 U.S. at 38). "Instead, the focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted." *Id.* (citing *Wilkins*, 559 U.S. at 39).

Plaintiff admits that he refused to allow Defendants Buckner and White to remove his handcuffs. Furthermore, Plaintiff concedes that he moved when Defendant Buckner entered his cell. Plaintiff, however, denies that he physically resisted Defendants Buckner and White during the course of the incident. Defendant Buckner denies using any force other than reactionary force to place Plaintiff on the ground in a controlled manner. (Doc. 36-1 at 5). Defendant White denies using any force. (Doc. 36-2 at 4). In contrast, Plaintiff maintains that Defendant Buckner slammed his head into a wall, threw him to the ground, and after Plaintiff was on the ground, Defendant Buckner hit him in the head, smacked his face, and twisted his handcuffs. Plaintiff further maintains that Defendant White kicked him in the ribs and stepped on his leg after he was on the ground. If Plaintiff's evidence is accepted as true, there would have been no reason to apply any additional force after Plaintiff was lying on the ground in handcuffs. Although Defendants Buckner and White were permitted to use reasonable force to

11

preserve discipline and security, viewing Plaintiff's allegations in the light most favorable to Plaintiff, a question of fact exists as to whether Defendants Buckner and White maliciously and sadistically used force to cause harm to Plaintiff or whether the force was applied in a good faith effort to maintain and restore discipline. *See, e.g., Blackshear v. Bailey*, No. 3:08-CV-927-J-34JRK, 2010 WL 934002, at *5 (M.D. Fla. Mar. 10, 2010) (denying summary judgment as to Eighth Amendment claim of excessive force because genuine issues of material fact existed regarding whether the force was applied in good faith or maliciously and sadistically).

To the extent Defendants Buckner and White contend that Plaintiff's injuries were *de minimus*, which supports a finding that the force was *de minimus* warranting summary judgment, this argument is unavailing. Plaintiff alleges that he suffers from headaches, back pain, and knee pain as a result of the incident, and the medical records demonstrate that he had a mild edema on his head after the incident. "'To conclude . . . that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry,' which is the nature of the force." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (quoting *Wilkins*, 559 U.S. at 39). Consequently, Defendants Buckner and White are not entitled to summary judgment.

Finally, Defendants Buckner and White argue that Plaintiff is not entitled to compensatory and punitive damages or to damages for mental injury because they are

precluded by 42 U.S.C. § 1997e. (Doc. 36 at 18-20). In support of this argument, Defendants contend that Plaintiff's injuries are *de minimus*. (*Id*.).

A plaintiff "must have more than a *de minimis* injury to recover for mental or emotional injury, but may still recover actual or nominal damages." *Johnson v. Ashworth*, No. CIV.A. 11-228-CG-C, 2014 WL 1331019, at *10 (S.D. Ala. Mar. 27, 2014) (citing *inter alia Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009); *Boxer X v. Harris*, 437 F.3d 1107, 1111 n. 3 (11th Cir. 2006)). In *Blackshear*, a case in which the plaintiff alleged injuries similar to those suffered by Plaintiff, the Court denied the defendants' motion for summary judgment as to the plaintiff's request for compensatory and punitive damages. 2010 WL 934002, at *10. The Court reasoned "that further factual development [was] needed to determine whether Plaintiff's injuries were *de minimis*." *Id*.

In light of Plaintiff's allegations, the Court concludes that further factual development is needed as to the issue of damages. Consequently, to the extent Defendants Buckner and White are seeking summary judgment as to Plaintiff's request for compensatory, punitive, and mental damages, the motion is denied.[4]

B.   **Deliberate Indifference to Serious Medical Need**

Defendant Robinson asserts that she is entitled to summary judgment because Plaintiff has not established (1) that he had a serious medical need, (2) that Defendant

---

[4] As discussed *infra*, the Court finds that Plaintiff's injuries do not constitute a serious medical need. However, this does not mean *per se* that Plaintiff's injuries are *de minimis*. *See, e.g., Blackshear*, 2010 WL 934002, at *15 n. 10.

13

Robinson acted with deliberate indifference, or (3) that Defendant Robinson's indifference caused Plaintiff's injury. (Doc. 35 at 11-15).

A prisoner's constitutional rights are violated "by a government official's deliberate indifference to serious medical needs.'" *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 763 (11th Cir. 2014) (quoting *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997)). To proceed on a claim of deliberate indifference to a serious medical need, "a plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Bell v. Sec'y of Fla. Dep't of Corr.*, 491 F. App'x 57, 59 (11th Cir. 2012) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

A plaintiff must satisfy "both an objective requirement and a subjective requirement." *Id.* (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1175–76 (11th Cir. 2011). To demonstrate the objective component, the plaintiff must demonstrate the existence of "an objectively serious medical need, which is one that a physician has diagnosed as requiring treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention." *Id.* (citing *Mann*, 588 F.3d at 1307). "Moreover, it must be a medical need that, if left unattended, poses a substantial risk of serious harm." *Id.* (citing *Mann*, 588 F.3d at 1307).

To establish the subjective component, the plaintiff must demonstrate that "prison officials acted with deliberate indifference to his serious medical need." *Id.*

14

(citing *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004)).  Deliberate indifference is established by showing that "the officials had subjective knowledge of a risk of serious harm, yet disregarded that risk by conduct that is more than mere negligence."  *Id.* (citing *Brown*, 387 F.3d at 1351).  "Generally, a plaintiff does not establish deliberate indifference merely because, although he received medical attention, he desired different modes of treatment than what he received."  *Id.* (citing *Hamm,* 774 F.2d at 1575.

Plaintiff has failed to establish that he suffered a serious medical need.  Plaintiff has not provided any evidence establishing he had a medical need that, if left unattended, posed a substantial risk of serious harm.  Even accepting as true Plaintiff's allegations that he reported to Defendant Robinson that he had injuries to his head and face, cuts around his kneecap and wrist that were bleeding, a swollen ankle, and severe pain on his right side and back, Plaintiff's medical records from the date of the incident through March 2015 establish that he did not have a medical need that posed a substantial risk of serious harm.

Nurse Dorr examined Plaintiff between 6:30 and 7:00 p.m. on November 17, 2014, a few hours after the incident.  (Doc. 35-2 at 3-6).  Plaintiff complained of pain on his head, the right side of his back, his right neck and shoulder, and his right rib cage.  (*Id.* at 3).  Nurse Dorr noted Plaintiff was walking with a limp and had a mild edema on the back of the right side of his head.  (*Id.* at 3, 6).  Nurse Dorr, however, indicated there was no bruising.  (*Id.* at 6).  Nurse Dorr gave Plaintiff ibuprofen and prescribed a topical

analgesic.  (*Id*. at 4).

On December 1, 2014, Plaintiff was treated for back pain, given ibuprofen, and x–rays were scheduled for the following day.  (*Id.* at 7-9).  The x-rays of Plaintiff's ribs and spine were normal, identified no fractures, collapsed or bruised lungs, and showed no disc space narrowing.  (*Id*. at 10-12).  Nurse Winkles saw Plaintiff on December 15, 2014, for complaints of back and shoulder pain and headaches.  (*Id*. at 15).  Plaintiff received ibuprofen for the pain.  (*Id*).  Nurse Winkles saw Plaintiff on December 16, 2014, and noted that he was standing straight with no apparent distress.  (*Id*. at 17).  Plaintiff was seen on December 22, 2014, for back and shoulder pain and was given ibuprofen.  (*Id*. at 20-21).

Nurse Winkles saw Plaintiff on January 6, 2015, for back, shoulder, and neck pain. (*Id*. at 23).  Nurse Winkles noted that he or she observed Plaintiff jump off the top bunk and that Plaintiff's gait was steady.  (*Id*.).  On January 16, 2015, Plaintiff was seen for complaints of back and neck pain.  (*Id*. at 25).  Nurse Winkles noted that although Plaintiff walks with a normal gait to get his medication and bends over without problem in the examination room, he walks bent over with a shuffling gait to reach the medical department.  (*Id*. at 26).  Nurse Winkles ordered the continued use of ibuprofen.  (*Id*.).

On March 12, 2015, Nurse Marcus saw Plaintiff for back and neck pain.  (*Id*. at 28-29).  Nurse Marcus noted Plaintiff was standing straight and walking with a steady gait. (*Id*. at 29).  Nurse Marcus directed Plaintiff to continue his use of ibuprofen.  (Id.).  On

16

March 20, 2015, Plaintiff was seen for back pain and was given ibuprofen.   (*Id*. at 31-32).  On March 31, 2015, additional x-rays were taken of Plaintiff's back, and the x-rays were normal with no indication of fractures of the spine.   (*Id*. at 40-41).

From the medical records, Nurse Dorr indicated Plaintiff was walking with a limp on the date of the incident, but he or she did not note any bruises or bleeding on any part of Plaintiff's body.   Furthermore, Plaintiff was able to stand and walk on the date of the incident even if he was in pain.   In addition to Nurse Dorr's observation that Plaintiff was walking, albeit with a limp, a video shows Plaintiff *inter alia* being examined by Defendant Robinson and subsequently pushing himself up from the floor with his arms to stand after he was taken to a cell.   The only injury observed by Nurse Dorr on the date of the incident was a mild edema, or swelling, on the back of Plaintiff's head.   Plaintiff was never diagnosed with any fractures, contusions, or any medical need that posed a substantial risk of serious harm.

Furthermore, from review of the video taken immediately after the incident which was submitted by Defendants Buckner and White, there is no observable blood or swelling on Plaintiff.   Courts have held that similar conditions to those suffered by Plaintiff did not constitute a serious medical need.   *See, e.g., Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 512 (11th Cir. 2010) (concluding that a bloody nose and mouth which lasted over five minutes, facial bruising, pain, disorientation, and blood clogs in the nose did not constitute serious medical need); *Burley v. Upton,* 257 F. App'x 207, 210

(11th Cir. 2007) (concluding that back pain was not serious medical need because "it was not so serious that 'if left unattended, [it] pose[d] a substantial risk of serious harm.'"); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (concluding that "swollen wrists with some bleeding. . . do not constitute. . . a 'serious medical need'". . . .); *Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir. 1978) (indicating that doctor's determination *inter alia* that plaintiff had a satisfactory and full range of motion in shoulder despite pain refuted that plaintiff had a serious medical need); *Blackshear v. Bailey*, No. 3:08-CV-927-J-34JRK, 2010 WL 934002, at *6 (M.D. Fla. Mar. 10, 2010) (concluding that "facial swelling, a reddened eye, a cut inside . . . mouth, abrasions on . . . wrists and bodily pain and bruising" did not constitute a serious medical need); *Willacy v. Cty. of Brevard*, No. 04-VV-1666ORL18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (finding that "numerous contusions and substantial bruising caused by being physically beaten and kicked, an excruciatingly painful 'burning' sensation causing partial and prolonged blindness as a result of having caustic material thrown into the eyes, and continued emotional and psychological trauma" did not constitute a serious medical injury).  Plaintiff, therefore, failed to establish he suffered from a serious medical need.  Consequently, Defendant Robinson is entitled to summary judgment.

### IV.   CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** as follows:

18

1. Defendant Robinson's Motion for Summary Judgment (Doc. 35) is **GRANTED**.

2. Defendants Buckner and White's Motion for Summary Judgment (Doc. 36) is **DENIED**.

3. A trial date will be set by separate order.

**DONE AND ORDERED** in Orlando, Florida, this 26th day of May, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-1
Tavares Farrington
Counsel of Record